IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
                                                    :

SECURITIES & EXCHANGE COMMISSION    :      3:05 CV 1747 (PCD)
                                                    :

V.                                                         :

PACKETPORT.COM, INC. ET AL.            :      MARCH 21, 2007
---------------------------------------------------------------X

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Securities and Exchange Commission ["plaintiff" or "the Commission" or "SEC"] commenced this lawsuit, against ten defendants, on November 15, 2005, regarding defendants' alleged "pump and dump" scheme that occurred from December 1999 to February 2000. The case was originally assigned to U.S. District Judge Janet C. Hall, who ordered on April 4, 2006 that all discovery was to be completed by March 31, 2007 and all dispositive motions were to be filed by May 15, 2007. Judge Hall ruled on multiple motions to dismiss and motions to strike filed by defendants, denying all of them.[1] Judge Hall, on September 28, 2006, granted plaintiff's motion to strike defendants' jury demand.

The case was transferred to the undersigned on January 10, 2007. By then, three defendants had filed motions to dismiss for lack of prosecution – defendants Durando and Packetport, Inc., and defendant Coons, both filed on January 2, 2007. A week later, defendants Dotoli, as well as defendants Packetport.com, Inc. and Microphase Corp., filed motions to join in these motions to dismiss. The SEC filed its brief in opposition on January 30, 2007. Defendants Durango and Coons filed their reply briefs on February 7, 2007 and

---

[1] Judge Hall also denied defendant Jaffe's motion for reconsideration or interlocutory appeal, on July 31, 2006 and October 18, 2006.

February 16, 2007, respectively.[2]

In these motions, defendants complain about plaintiff's cumulative defaults on its numerous discovery obligations over the past few months, especially when viewed in context with its behavior prior to the filing of the lawsuit and immediately after the filing of the lawsuit. As defendant Coons describes, "The cumulative effect of the [SEC's] delays in this case is to exacerbate the long delay preceding the commencement of this action and has prejudiced Mr. Coons' ability to mount a defense." (Def. Coons' Mem. Supp. Mot. Dismiss 2). Defendants Durando and Packetport, Inc. compared this lawsuit to the "long, drawn-out lawsuit" of <u>Jarndyce v. Jarndyce</u> in Charles Dickens' <u>Bleak House</u>, characterizing this case as a "model for dilatory, drawn-out litigation bent on destroying the defendants through delay and procrastination." (Def. Durando and Packetport, Inc.'s Mem. Supp. Mot. Dismiss 1).

The parties agree that the trading at issue in this lawsuit began in December 1999. The SEC promptly started its investigation on December 16, 1999, two days after the alleged scheme began. During this time, however, the SEC failed to seek an injunction or file any administrative proceeding to stop any of the allegedly illegal activities. Defendant Coons voluntarily appeared for a deposition before the SEC in October 2000, cooperated fully with the Commission, and additionally waived any privilege against self-incrimination. According to defendant Coons, the SEC never sought to depose his former employer, Investec, regarding any internal policies and procedures of the company or about industry norms. About eighteen months later, in April 2002, the SEC notified the defendants, through a so-called "Wells

---

[2]There are six discovery motions pending before U.S. Magistrate Judge Joan G. Margolis, to whom all discovery matters were referred on January 31, 2007.

Notice," that it was recommending that a civil proceeding be filed against them. Sometime in 2002, the SEC also referred the matter to the U.S. Attorney's Office in Connecticut, to investigate whether criminal charges were also appropriate.[3] By November 2004, some two-and-one half years after the SEC referred the matter to it, the Connecticut U.S. Attorney's Office declined to prosecute the case and referred the matter back to the SEC. Despite the five-year statute of limitations for an action for civil penalties running in February 2005,[4] the SEC did nothing until November 15, 2005, when it filed this lawsuit – almost six years after the allegedly illegal acts began, three-and-one-half years after the "Wells Notice," about three years after the matter was referred to the U.S. Attorney's Office in Connecticut, one year after the U.S. Attorney's Office declined to prosecute, and nine months after the statute of limitations ran for civil penalties. (Def. Coons' Mem. Supp. Mot. Dismiss 2-3; Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 2-3; Def. Coons' Reply Mem. Mot. Dismiss 2-3).

Even after this lawsuit was filed, the SEC hardly hastened its pace. On February 23, 2006, the parties filed their First Report of Rule 26(f) Planning Meeting, that was approved in part by Judge Hall on April 4, 2006. Judge Hall set a number of deadlines, including that plaintiff provide its damages analysis by September 1, 2006 and provide its expert report(s) by December 31, 2006; as previously indicated, all discovery is to be completed by March 31,

---

[3]As defendants point out, a criminal investigation does not preclude the SEC from seeking administrative relief, a civil injunction, or civil penalties. See SEC v. Dresser Indus., 628 F.2d 1368, 1377 (D.C. Cir.)("Effective enforcement of the securities laws requires that the SEC and [the Department of] Justice be able to investigate possible violations simultaneously. . . . The SEC cannot always wait for [the Department of] Justice to complete the criminal proceedings if it is to obtain the necessary prompt civil remedy. . . ."), cert. denied, 449 U.S. 993 (1980).

[4]See 28 U.S.C. § 2462; Johnson v. SEC, 87 F.3d 484 (D.C. Cir. 1996).

2007. Defendants complain that the SEC never provided its damages analysis by September 1, 2006 and never sought an extension of that deadline, despite its seeking a $9,000,000 disgorgement from defendants. (Def. Coons' Mem. Supp. Mot. Dismiss 3; Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 3-4). On October 30, 2006 and November 2, 2006, defendants Durando and Packetport, Inc., and defendant Coons, respectively, served discovery requests on plaintiff.[5] The SEC never responded to these requests, and never asked for an extension, until it indicated in a reply brief, filed on December 28, 2006, that it would comply by January 9, 2007. (Pl's Reply Mem. Mot. for Leave and Ext. of Time 2). On November 10, 2006, defendants Durando and Packetport, Inc. also served their First Request for Admissions on SEC, which were due on December 11, 2006; the SEC similarly failed to respond, which defendants argue is deemed an admission. (Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 4).

In addition, from April 2006 through the present, the SEC has not taken a single deposition in this case. (Def. Coons' Mem. Supp. Mot. Dismiss 3). During summer 2006, defendants noticed the depositions of two attorneys; when a dispute arose about the necessity of these depositions, the SEC represented that it would file a motion to adjourn the depositions <u>sine die</u>. (Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 5). Plaintiff's Motion for Protective Order regarding these depositions was not filed until January 12, 2007,

---

[5] Defendants assert that without an extension of time for good cause shown, a failure to respond to discovery requests in a timely manner constitutes a waiver of any objection. See, e.g., FED. R. CIV. P. 33(b)(4); <u>Scott v. Arex</u>, 124 F.R.D. 39, 41-42 (D. Conn. 1989)(citation omitted).

<u>after</u> these dispositive motions were filed.[6]

Lastly, as stated before, the SEC was to disclose its expert report(s) by December 31, 2006. On December 26, 2006, the first business day after the Christmas holiday weekend, the SEC filed a Motion to Extend the Deadline for the Commission to Disclose Its Expert's Report, seeking a postponement until January 10, 2007; the motion represented that "[t]wo of its counsel, <u>who have worked on this matter for several years</u>, had previously scheduled vacations for the week between the Christmas and New Year's holidays," so that "they are not available this week for a final conference with the Commission's expert." (Pl's Mot. Ext. Deadline 1)(emphasis added). The SEC further asserted that since these attorneys "<u>have accrued substantial factual knowledge over the years</u>, it would prejudice the Commission if they could not confer with [its expert] before he completed his report." <u>Id.</u> (emphasis added). Judge Hall granted the motion the next day. That same day, the SEC filed another motion for extension, this time relating to a brief that had been due on December 21, 2006; on December 29, 2006, Judge Hall granted the motion, over objection, but added that "the Court is concerned that deadlines are not being met. . . . The Court does not expect to re[cei]ve from plaintiff further motions for extension of deadlines."[7]

---

[6]As previously mentioned, that motion, as well as the other discovery motions, are before Magistrate Judge Margolis.

[7]As counsel for defendant Coons lamented:

> We stress that we ordinarily would consent to extensions of time as an ordinary matter of courtesy and regretted having felt compelled to turn [SEC's counsel] down in this instance. We further recognize that, if the Commission's objectionable conduct were confined to improper objections to discovery, in the ordinary course we would confer with counsel to resolve the matter amicably. But this is not a garden-variety motion for discovery sanctions.

5

In opposition, the SEC argues that the key parties participated in mandatory settlement conferences before U.S. Magistrate Judge Holly B. Fitzsimmons in April and May 2006, and plaintiff responded to the myriad motions filed by defendants between mid-January 2006 and late March 2006. (Pl's Mem. Opp. Mots. Dismiss 4). As to the depositions noticed in early June 2006, plaintiff's counsel asserts that discussions about these depositions "took on an entirely different cast" when defense counsel informed plaintiff's counsel, on or about September 13, 2006, that they had discovered a confidential document that apparently had been disclosed inadvertently. (Id. at 4-5). The parties engaged in discussions over this issue through mid-December 2006. (Id. at 5-6). On September 15, 2006,[8] the SEC's counsel "underwent major surgery, which kept him from maintaining a full schedule until about early November." (Id. at 5, n.4).

The SEC continues that in accordance with the extensions it received, it filed its brief in opposition to one defense motion by January 5, 2007 and served its expert report by January 10, 2007. (Id. at 6). On January 23, 2007, the Chief Executive Officer of defendant Microphase, Inc. was deposed, and six days later, the parties agreed on a tentative deposition schedule. (Id.). Thus, plaintiff argues that "[t]hese circumstances do not remotely meet the requirements for the court to exercise its discretion to dismiss the Commission's claim against these [d]efendants." (Id.).

In their reply brief, defendants Durando and Packetport, Inc. respond that the only deposition that was completed had been noticed by one of the defendants. (Def. Durando &

---

(Defendant Coons' Mem. Supp. Mot. Dismiss 5-6).

[8]Plaintiff's brief contains a typographical error, in referring to these events as occurring in September 200<u>7</u>.

6

Packetport, Inc.'s Reply Mem. Mot. Dismiss 3, n.5). They emphasize that plaintiff's failure to provide a damages analysis by September 1, 2006 should, at the minimum, be treated as a violation of a court order and/or a concession that there is no principled basis for a $9,000,000 disgorgement claim. (Id. at 2-5). Defendants also represent that the SEC "mischaracterizes events in the summer and fall of 2006 in its attempt to mislead the Court into believing that the Commission was diligent in its prosecution of the case." (Id. at 5). For example, defendants point out that from March 2006 through August 2006, the only motions filed by the SEC were ones for extension of time to respond to the defendants' motions. (Id. at 6). They further allege that the SEC "was in no hurry to resolve" the issue of the inadvertently disclosed memorandum during the last half of 2006, and the delays were not due to the summer vacation schedules of defense counsel; defendants point out that as of the filing of the motion, plaintiff still had not taken any depositions. (Id.. at 5, 6-7). As to the health issues of plaintiff's counsel, defense counsel contends that they are "stunned" that the claim that "one attorney's reduced schedule would preclude participation by any other Commission attorney in this case" of which there are five, through the end of 2006. (Id. at 7-8). They add that the SEC "sat on its hands" with respect to defendants' discovery requests in October and November 2006 (id. at 6), and that the SEC has shown a six year pattern of delay, not merely one month. (Id. at 8-9).

Federal Rule of Civil Procedure 41(b) provides in relevant part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order of dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

The parties agree that the most recent Second Circuit case on this issue is <u>United States ex rel. Drake v. Norden Sys., Inc.</u>, 375 F.3d 248 (2d Cir. 2004)["<u>Drake</u>"], where the Second Circuit repeated the five-part test to assist a district judge in deciding whether to dismiss a case under Rule 41(b) for failure to prosecute:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against the plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

<u>Id.</u> at 254 (citations omitted). The Second Circuit added: "No one factor is dispositive, and ultimately we must review the dismissal in light of the record as a whole." <u>Id.</u> (citation omitted). In <u>Drake</u>, plaintiff had missed, by seventeen months, the court's deadline for filing an amended complaint, at which time Senior U.S. District Judge Ellen Bree Burns dismissed his lawsuit under Rule 41(b). <u>Id.</u> at 250.

Regarding the first factor of duration, the Second Circuit dissected this into two parts – whether the failures to prosecute were those of the plaintiff, and whether these failures were of significant duration. <u>Id.</u> at 255. Plaintiff did not contest that his attorney was at fault for the delay, and the Second Circuit agreed with Judge Burns that plaintiff's seventeen-month delay was "significant," and "[i]ndeed, . . . [was] comparable to, if not longer than, delays that have supported dismissals in other cases." <u>Id.</u> (citations omitted). The Second Circuit observed that "[i]f duration were the only factor, we would have no hesitation in affirming the district court's dismissal." <u>Id.</u>

Except for the period between mid-January 2006 and late April 2006, when plaintiff was responding to defendants' multiple dispositive motions, for which it understandably

8

sought extensions of time, there can be little dispute that the failures to prosecute were those of plaintiff. If the Court were to assess the SEC's behavior solely since the filing of the lawsuit, the issue of whether the delays "were of significant duration" would be a more difficult one. For example, plaintiff's discovery responses that were due in November and December were filed in early January 2007, after obtaining an extension from Judge Hall; plaintiff's expert disclosure, which was due on December 31, 2006, was also made in early January 2007, also after receiving an extension from Judge Hall. These delays, by themselves, are of a de minimus nature. The SEC is incorrect, however, that its delay "was only slightly more than one month." (Pl's Mem. Opp. Mot. Dismiss 8-9). More significant is the fact that plaintiff never provided its damages analysis, due on September 1, 2006, as ordered by Judge Hall, and never sought an extension of that date, now six months past. In the eleven months since Judge Hall approved the parties' discovery schedule, plaintiff has taken only one deposition, as the March 31, 2007 deadline looms.

Looking at "the record as a whole," id. at 254 (citation omitted), the SEC's lethargy in its approach to discovery is remarkable, given the fact that the lawsuit was filed almost six years after the allegedly illegal acts in December 1999, three-and-one-half years after the "Wells Notice" was given to defendants, about three years after the matter was referred to the U.S. Attorney's Office in Connecticut for a criminal investigation, one year after the U.S. Attorney's Office declined to prosecute, and nine months after the statute of limitations ran for civil penalties.[9] Any and all of these delays, added to the snail's pace at which the SEC is

---

[9]As Defendants Durando and Packetport, Inc. point out (Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 7), delay under Rule 41(b) includes not only the failure to pursue the litigation in the district court, but also the failure to prosecute in an alternative forum, such as

9

pursuing discovery in this action, constitute failures "of a significant duration." Thus, the first factor favors dismissal under Rule 41(b). See also Europacific Asset Mgmt. Corp. v. Tradescape, Corp., 233 F.R.D. 344, 346-53 (S.D.N.Y. 2005)(plaintiff's failure to effectuate service on one defendant for almost two years after filing of amended complaint described as "egregious," warranting Rule 41(b) dismissal, as did plaintiff's sixteen-month failure to proceed against another defendant against whom a default judgment had been entered).

As in Drake, the second factor, notice, "cuts against dismissal" here. 375 F.3d at 255. The only warning that appears in the court record[10] is Judge Hall's observation in her electronic order of January 3, 2007 that "[t]he Court is troubled by the apparent inability of the SEC to meet deadlines, and it appears that there remain significant issues about compliance with the scheduling order." This hardly satisfies the Drake test. Id. at 255-56.

For the third factor, prejudice, the Second Circuit observed that "[p]rejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable." Id. at 256 (citation omitted). Where "delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." Id. (citation & internal quotations omitted). In Drake, the Second Circuit held that with respect to certain of plaintiff's claims, "defendants were on notice of the charges against them," so that

---

an administrative agency or arbitration proceeding. See, e.g., Allied Air Freight, Inc. v. Pan Am. World Airways, Inc., 393 F.2d 441, 445 (2d Cir.), cert. denied, 393 U.S. 846 (1968); Ames v. Standard Oil Co., 108 F.R.D. 299, 302 (D.D.C. 1985).

[10]Counsel for defendants Durando and Packetport, Inc. represent that at the Rule 16 conference, Judge Hall warned all parties that she would not tolerate delay and that if counsel could not prosecute the case to conclusion based on their schedules, they should withdraw their appearances. (Defendants Durando & Packetport, Inc.'s Memo. Supp. Mot. Dismiss 8). This warning, however, is not part of the official court record.

they "were therefore in a good position to preserve evidence and prepare their defense to these claims despite the delay in the essentially technical tasking of amending the complaint." Id. at 257. However, for certain other claims, "[u]ntil these claims were repleaded, defendants were therefore in the dark as to the exact contours of the charges against them and so they would have had a much harder time preparing their defense." Id. As a result, the Second Circuit did not "disturb" Judge Burns' finding of prejudice, although it concluded that the prejudice was not severe as to some claims. See also Europacific Asset, 233 F.R.D. at 353-54 (prejudice to defendants presumed by virtue of two year and sixteen-month delay against two defendants).

Just like the issue of delay, defendants cannot claim prejudice regarding the delays from the filing of the complaint in mid-November 2005 until the present, except with regard to the damages analysis. However, again looking at "the record as a whole," id. at 254 (citation omitted), in the words of the defendants, the prejudice is "obvious" and "cannot be understated." (Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 8; Def. Coons' Mem. Supp. Mot. Dismiss 4-5; Def. Coons' Reply Mem. Supp. Mot. Dismiss 6). As Defendant Durando explains, he "has been forced to live under a cloud for the past seven years – threatened by the government with a disgorgement order of $9 million." (Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 8). The prejudice is even more apparent with regard to defendant Coons, who voluntarily testified before the SEC on October 31, 2000, and the Commission subsequently "has . . . done nothing otherwise to create a record regarding whether Mr. Coons' conduct in 1999 violated or complied with [his former employer's] standard compliance policies and procedures and/or industry norms." (Def. Coons' Mem.

Supp. Mot. Dismiss 3)(emphasis in original)(footnote omitted).[11]  Following the concerns expressed by the Second Circuit in Drake, these defendants are not "in a good position to preserve evidence and prepare their defense to these claims despite the delay," but rather are "in the dark as to the exact contours of the charges against them," so that "they would have had a much harder time preparing their defense," 375 F.3d at 257, regarding events occurring now more than seven years ago, in December 1999.[12]  Therefore, this factor weighs heavily in favor of dismissal.

The same conclusion is reached as in Drake regarding the fourth factor, the balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard, namely that while this District Court continues to have a congested docket, this case, by itself, does not impact the trial calendar, so that this factor militates against dismissal. Id.

With respect to the last factor, the consideration of lesser sanctions, in Drake, Judge Burns had briefly considered the possibility of imposing a fine instead of dismissing the case outright, but ultimately rejected this option, because she held that a fine would not adequately address the prejudice defendants had suffered. Id. The Second Circuit held that this finding was not "clearly erroneous," although it again differentiated between plaintiff's various claims in terms of the prejudice to defendants. Id.

In this case, defendants request that if the Court does not exercise its sound discretion in dismissing the SEC's complaint, then the Court should instead "exercise its supervisory

---

[11] According to Defendants Durando & Packetport, Inc., Defendant Jaffe, who is the "lynchpin of the [d]efendant's defense," has "a very serious, life-threatening illness," which may preclude him from testifying at trial. (Defs. Durando & Packetport, Inc.'s Reply Mem. Mot. Dismiss 9-10).

[12] See also Defs. Durando & Packetport, Inc.'s Reply Mem. Supp. Mot. Dismiss 2-5.

authority in this matter to fashion an appropriate sanction, such as the preclusion of expert testimony, evidence relating to the long overdue damages analysis, [and] any evidence sought by the unanswered interrogatories and document requests served by [defendants]. . . ." (Def. Coons' Mem. Supp. Mot. Dismiss 8-9; see also Defs. Durando & Packetport, Inc.'s Mem. Supp. Mot. Dismiss 9-10; Def. Coons' Reply Mem. Mot. Dismiss 7-9). The SEC maintains that no sanction is warranted. (Pl's Mem. Opp. Mot. Dismiss 9-10).

This case is an unusual one, in that in its complaint, plaintiff does not seek damages, but rather permanent injunctions against defendants and disgorgement of all proceeds gained or compensation received from the allegedly illegal conduct described in the complaint. (Complaint, at 34-37). The SEC does not dispute that it is not seeking penalties or to recover investor losses or damages, as would a private plaintiff, but rather equitable relief. (Pl's Mem. Opp. Mot. for Jud. Not. at 5, n.5, at 7, n.7). As previously indicated, the SEC was tardy in its discovery responses and in disclosing its expert opinions, but not so late as to merit preclusion. Thus, the only lesser sanction, besides attorney's fees, would be preclusion of any evidence relating to the damages analysis which was due more than six months ago, and for which plaintiff never sought any extension of time. Such preclusion effectively would bar plaintiff's claim for disgorgement, leaving only plaintiff's requests for various permanent injunctions. But as addressed before, such injunctive relief would bar defendants from pursuing their livelihood, based upon events that happened some seven years ago, for which defendants largely have been deprived of the ability to defend themselves properly. Under these circumstances, there do not appear to be any adequate lesser sanctions that can be imposed against plaintiff.

Bearing in mind that under Drake, "[n]o one factor is dispositive," 375 F.3d at 254, three of the five factors gravitate in the direction of dismissal under Rule 41(b), while the remaining two militate against such dismissal. Under these circumstances, and especially in light of the significant delay in this case, dismissal under Rule 41(b) is appropriate.

Therefore, Defendant Coons' Motion to Dismiss for Lack of Prosecution [Doc. No. 152] and Defendants Durando and Packetport, Inc.'s Motion to Dismiss for Lack of Prosecution [Doc. No. 154] are **granted**. Defendant Dotoli's Motion to Join Motion [Doc. Nos. 158-59] and Defendants Microphase and Packetport.com, Inc.'s Motions to Join Motion [Doc. No. 160] are also **granted**.

SO ORDERED.

Dated at New Haven, Connecticut, March  21 , 2007.

>　　　　　　　　　　　　　/s/
>　　　　　　　Peter C. Dorsey, Senior U.S. District Judge
>　　　　　　　United States District Court