UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>  Plaintiff, | :<br>:<br>:<br>: |
| -vs- | :  Civil No. 3:05cv1747 (PCD) |
| PACKETPORT.COM, INC., RONALD DURANDO, PACKETPORT, INC., MICROPHASE CORP., ROBERT H. JAFFE, GUSTAVE DOTOLI, IP EQUITY, INC., M. CHRISTOPHER AGARWAL, THEODORE KUNZOG, WILLIAM COONS,<br>  Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**RULING ON SEC'S MOTIONS FOR RECONSIDERATION**

Plaintiff, the United States Securities and Exchange Commission (the "SEC" or the "Commission"), moves, pursuant to Federal Rule of Civil Procedure 59(e), for reconsideration of this Court's March 21, 2007 Ruling dismissing this action against Defendants PacketPort.com, Inc., PacketPort, Inc., Ronald Durando, Microphase Corp., Gustave Dotoli and William Coons [Doc. No. 187] and April 4, 2007 Ruling dismissing this action against Defendant Robert H. Jaffe [Doc. No. 195]. For the reasons that follow, the SEC's Motions for Reconsideration [Doc. Nos. 194, 196] are **granted**.

**I. BACKGROUND**

Familiarity with the facts, as set forth in this Court's Ruling on Defendants' Motions to Dismiss [Doc. No. 187], see SEC v. PacketPort.com, Inc., No. 3:05cv1747 (PCD), 2007 U.S. Dist. LEXIS 20839, *4-10 (D. Conn. Mar. 22, 2007), is assumed. A summary of the facts necessary to the resolution of this motion will be set forth here.

### A. Procedural History

The SEC commenced this lawsuit against ten defendants on November 15, 2005, alleging that Defendants engaged in a fraudulent "pump and dump" market manipulation scheme from December 1999 through February 2000. The case was originally assigned to United States District Judge Janet C. Hall, but was transferred to the undersigned on January 10, 2007.[1] On April 4, 2006, Judge Hall ordered that all discovery was to be completed by March 31, 2007 and all dispositive motions were to be filed by May 15, 2007. Between the time of filing and transfer, Judge Hall ruled on multiple motions to dismiss and motions to strike filed by Defendants, denying all of them.

On January 2, 2007, shortly before the case was transferred, Defendants Durando and PacketPort, Inc., as well as Defendant Coons, filed motions to dismiss for failure to prosecute [Doc. Nos. 152, 154]. On January 9, 2007, those motions were joined by Defendants Dotoli, PacketPort.com, Inc. and Microphase Corp. Numerous discovery motions were also filed around that time, including Defendants Durando and PacketPort, Inc.'s Motion to Compel Depositions [Doc. No. 157], filed on January 8, 2007, the SEC's Motion for Protection Order [Doc. No. 163], filed January 12, 2007, Defendants Durando and PacketPort, Inc.'s Motion to Strike [Doc. No. 165], filed January 12, 2007, Defendants Durando and PacketPort, Inc.'s Motion to Strike Plaintiff's Responses and Objections to Defendants' First Requests to Admit as Untimely [Doc. No. 166], filed January 12, 2007, Defendant Coons' Motion to Strike the Commission's Responses to Interrogatories and Document Requests, or in the alternative, for an Order to Compel Discovery [Doc. No. 167], filed January 17, 2007, and Defendant Coons' Motion to

---

[1] On January 31, 2007, all discovery matters were referred to Magistrate Judge Joan G. Margolis.

Compel [Doc. No. 172], filed January 17, 2007.

On March 21, 2007, this Court issued a Ruling granting Defendants' motions to dismiss for lack of prosecution. (See Ruling Mot. Dismiss, Mar. 21, 2007, Doc. No. 187.) On March 26, 2007, Magistrate Judge Margolis denied as moot the pending discovery motions. (See Order, Mar. 26, 2007, Doc. No. 188.) Two days later, on March 28, 2007, Defendant Robert H. Jaffe filed a Motion to Dismiss for Lack of Prosecution [Doc. No. 189]. Defendant Jaffe's motion was granted on April 4, 2007 for the same reasons as set forth in the March 21, 2007 ruling. The SEC filed motions for reconsideration of these two rulings on April 4 and April 6, 2007.

**B.      Statement of Facts**

The trading at issue in this lawsuit began in December 1999. The SEC started its investigation on December 16, 1999. Defendant Coons voluntarily appeared for a deposition before the SEC in October 2000. He cooperated fully with the SEC and waived any privilege against self-incrimination. In April 2002, the SEC sent Defendants a "Wells Notice," notifying them that it was recommending that a civil proceeding be filed against them. The SEC then, sometime in 2002, referred the matter to the United States Attorney's Office in Connecticut to investigate whether criminal charges were appropriate. In November 2004, the Connecticut U.S. Attorney's Office declined to prosecute the case and referred the matter back to the SEC. The SEC filed this lawsuit on November 15, 2005, almost six years after the allegedly illegal acts began. Because the action was filed nine months after the statute of limitations ran for civil penalties, the SEC is seeking only equitable relief.[2]

---

[2] Specifically, the SEC is seeking to permanently enjoin Defendants from violating, causing violations of, or aiding and abetting violations of various sections of the Exchange Act and Securities Act, and for the disgorgement of all proceeds gained or compensation received from the

The parties filed their First Report of Rule 26(f) Planning Meeting on February 23, 2006. Judge Hall approved the report in part on April 4, 2006, ordering the SEC to provide its damages analysis by September 1, 2006 and its expert report(s) by December 31, 2006. As previously indicated, all discovery was to be completed on or before March 31, 2007. (See Joint Report, Apr. 4, 2006, Doc. No. 102.)

The SEC failed to provide a damages analysis and failed to seek an extension of its deadline to do so, despite its seeking a $9,000,000 disgorgement from Defendants.[3] The SEC contends, however, that despite its failure to provide a formal disgorgement analysis, it had provided Defendants with information supporting the amounts of disgorgement it was seeking. (See SEC's Mem. Supp. Mot. Recons. 9.) Specifically, the SEC references information provided in the Complaint, information in brokerage account statements to which Defendants had access, and the expert report of Robert Lowry, which identifies specific sales of PacketPort.com stock with specific groups of Defendants. (See id.)

On October 30, 2006 and November 2, 2006, Defendants Durando and PacketPort, Inc., and Defendant Coons served discovery requests on the SEC. The SEC did not respond to these discovery requests and did not ask for an extension. In a reply brief filed on December 28, 2006, the SEC indicated that it would comply by January 9, 2007. On January 9, 2007, the SEC belatedly responded to the First Set of Interrogatories, Requests for Production, and Requests for Admission of Defendants Durando, PacketPort, Inc., and Coons. On November 10, 2006,

---

allegedly illegal conduct. (See Compl. ¶¶ I-XII.)

[3] The SEC attached a disgorgement analysis to its Motion for Reconsideration. (See Disgorgement Analysis, Ex. 2 to SEC's Mot. Recons.)

Defendants Durando and PacketPort, Inc. served their First Request for Admissions on the SEC. Responses were due on December 11, 2006, however, the SEC did not respond until February 15, 2007. The SEC served the expert report of its expert witness on January 10, 2007, within the extended deadline allowed by the Court.

The SEC did not take a single deposition until after the motions to dismiss for failure to prosecute were filed and fully briefed. In a letter delivered to this Court on March 6, 2007, the SEC informed the Court that the parties "have taken three depositions over the past three weeks, and they have scheduled eight (8) depositions for the next three weeks." (McHale Letter 2, Mar. 6, 2007.) By March 22, 2007, the date the dismissal order was entered on the docket, the SEC had noticed and taken eight of the nine referenced depositions (one in January, one in February, and eight in March), and had scheduled the depositions of two remaining individual defendants to take place before the March 31, 2007 discovery cut-off date. The SEC agreed with defense counsel to take the deposition of Defendant Jaffe in the week following the discovery cut-off date.

## II. STANDARD OF REVIEW

Reconsideration will generally only be granted when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted) (cautioning that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again"). Reconsideration should therefore be granted when a "party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be

5

expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). This Court will not grant a motion to reconsider "where the moving party seeks solely to relitigate an issue already decided," to "plug gaps in an original argument or to argue in the alternative once a decision has been made." Id.; Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F. Supp. 287, 289 (S.D.N.Y. 1996) (citations omitted). The Second Circuit has found it "well-settled" that "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories . . . or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. Gbj Corp., 156 F.3d 136, 144 (2d Cir. 1998) (citations omitted). The standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court. Shrader, 70 F.3d at 257. Ultimately, however, the question is a discretionary one and the court is not limited in its ability to reconsider its own decisions prior to final judgment. See Virgin Atl., 956 F.2d at 1255.

## III. DISCUSSION

A district court can, in the exercise of its discretion, dismiss an action for lack of prosecution of failure to comply with the court's orders pursuant to Federal Rule of Civil Procedure 41(b). Rule 41(b) provides in pertinent part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.

Fed. R. Civ. P. 41(b). The Second Circuit has set forth five factors for a district court to consider in deciding whether to dismiss a case pursuant to Rule 41(b) for failure to prosecute. Specifically, courts should consider whether:

(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2)

6

> plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

United States ex rel. Drake v. Norden Sys., 375 F.3d 248, 254 (2d Cir. 2004). The Second Circuit has made clear that when analyzing these factors, "[n]o one factor is dispositive, and ultimately [courts] must review the dismissal in light of the record as a whole." Id. This Court's March 21, 2007 Ruling applied the correct standard and analyzed the instant case under each of these five factors.

### A. Duration

With regard to the first factor, length of delay, this Court noted that this factor is broken down into two parts: "(1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." Id. at 255. The Court concluded that "the failures to prosecute were those of plaintiff," and found it significant that "plaintiff never provided its damages analysis . . . and never sought an extension" of the September 1, 2006 deadline to do so. (Ruling Mot. Dismiss 9.) The Court also looked at the "record as a whole," as instructed in Drake, and concluded that "the SEC's lethargy in its approach to discovery" was even more significant in light of its almost six-year delay in filing the case—i.e., the Complaint was not filed until almost six years after the allegedly illegal acts began, three and one-half years after the "Wells Notice" was given to Defendants, three years after the matter was referred to the United States Attorney's Office for a criminal investigation, one year after the United States Attorney's Office declined to prosecute the matter, and nine months after the statute of limitations ran for civil penalties. (Id.) The Court found that the combination of these delays constituted "failures of a significant duration," and concluded that the first factor weighed in

favor of dismissal. (Id. at 10.)

### B. Notice

The Court found that the second factor, notice, cut against dismissal, as the only warnings to the SEC were (1) Judge Hall's observation that "[t]he Court is troubled by the apparent inability of the SEC to meet deadlines, and it appears that there remain significant issues about compliance with the scheduling order," (Order, Jan. 3, 2007, Doc. No. 155), and (2) Judge Hall's warning at the Rule 16 conference that she would not tolerate delay and that if counsel could not prosecute the case to conclusion based on their schedules, they should withdraw their appearances, (see Defs. Durando & PacketPort, Inc.'s Mem. Supp. Mot. Dismiss 8).

The Supreme Court has made clear, however, that "the absence of notice or failure to hold a hearing does not necessarily render a dismissal void; the adequacy of notice and a hearing turn on a party's knowledge of the consequences of his own conduct." Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982) (citing and discussing Link v. Wabash Railroad Co., 370 U.S. 626, 632, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)). The SEC cannot seriously contend that it was unaware of the consequences of failure to comply with a Court order or other delay. Finally, Defendants had filed and the SEC had responded to several motions to dismiss for failure to prosecute, which the Second Circuit has construed as a form of notice in evaluating this factor. See, e.g., Lyell Theatre Corp., 682 F.2d at 42 (relying on, *inter alia*, the fact that the defendants had moved to dismiss for lack of prosecution in finding that the notice was sufficient); see also Martens v. Thomann, 273 F.3d 159, 181 (2d Cir. 2001) (finding a lack of notice when the parties had not been asked to brief the issue of failure to prosecute). Therefore, even though this Court previously held that this factor weighs against dismissal, it cannot be said

that the SEC had no notice that dismissal was possible.

**C. Prejudice**

"Prejudice may be presumed as a matter of law in certain cases, but the issue turns on the degree to which the delay was lengthy and inexcusable.[4] In cases where 'delay is more moderate or excusable, the need to show actual prejudice is proportionally greater.'" Drake, 375 F.3d at 256 (quoting Lyell, 682 F.2d at 43). This Court, in its prior Ruling, did not find prejudice to be presumed as a matter of law, but held that the prejudice to Defendants from the delays in filing and moving the case along was "obvious" and "cannot be understated." (Ruling Mot. Dismiss 11.) The Court's analysis of the third factor focused on the prejudice arising out of the delays in filing a Complaint to Defendants Durando and Coons, who had "been forced to live under a cloud for the past seven years," and to all defendants, who are now "not 'in a good position to preserve evidence and prepare their defense to these claims despite the delay,' but rather are 'in the dark as to the exact contours of the charges against them,' so that 'they would have had a much harder time preparing their defense' regarding events occurring now more than seven years ago, in December 1999." (Id. at 11-12.) Based on its reasoning regarding the pre-filing delays, this Court found that this factor weighed "heavily" in favor of dismissal. (Id. at 12.) The Court noted, however, that aside from the prejudice resulting from the SEC's failure to produce a damages analysis, Defendants cannot claim prejudice regarding the delays from the filing of the Complaint to the present time. (Id. at 11.)

**D. Balance Between Calendar Congestion and Opportunity to Be Heard**

---

4     Even where prejudice is presumed, it is a rebuttable presumption that can be supported or disproved with evidence submitted by the parties. See Drake, 375 F.3d at 257.

9

In the March 21 Ruling, this Court found that because this case, by itself, does not impact the trial calendar, the fourth factor militates against dismissal. (Ruling Mot. Dismiss 12.) This Court failed to note, however, the extent to which the SEC's noncompliance resulted in the filing of numerous motions and contributed significantly to the Court's workload. Immediately prior to the March 22, 2007 dismissal, there were twelve motions pending, including five motions to dismiss for failure to prosecute, five discovery motions filed by Defendants and one motion for protective order filed by the SEC.[5] Two of the motions filed by Defendants were motions to compel, which claimed that the SEC had refused to produce witnesses for deposition and failed to produce certain documents. (See Durando & PacketPort, Inc. Mot. Compel, Jan. 8, 2007, Doc. No. 157; Coons Mot. Compel, Jan. 17, 2007, Doc. No. 172.) Defendants Durando, PacketPort, Inc., and Coons also filed Motions to Strike based on the SEC's lengthy delay in serving discovery responses after the time to do so had passed. (See Durando & PacketPort, Inc. Mot. Strike, Jan. 12, 2007, Doc. No. 165; Durando & PacketPort, Inc. Mot. Strike, Jan. 12, 2007, Doc. No. 166; Coons Mot. Strike, Jan. 17, 2007, Doc. No. 167.) Moreover, in the short amount of time between the date that this case was transferred, on January 10, 2007, until the date of the Ruling dismissing the case, March 21, 2007, the SEC had filed six motions for extensions of time. Therefore, the SEC's pattern of delay did impact the Court's docket and add to its congestion.

### E.  Efficacy of Lesser Sanctions

---

[5] The SEC's Motion for Protective Order asked this Court to quash Defendants' Rule 30(b)(6) Notice to take the deposition of the SEC, claiming that the Notice "improperly calls for an unwarranted intrusion into the Commission's decision-making process and attorney work product through the mental impressions of its staff." (SEC's Mem. Supp. Mot. Prot. Order 4, Jan. 12, 2007, Doc. No. 163.)

10

In the March 21 Ruling, this Court considered and evaluated the efficacy of lesser sanctions. (Ruling Mot. Dismiss 13.) Defendants had requested the Court impose a lesser sanction if it did not dismiss the case, such as the preclusion of expert testimony, evidence related to the long overdue damages analysis, or any other evidence sought by the (then) unanswered interrogatories and document requests served by Defendants. (See id.) Because the statute of limitations for civil penalties has run, the SEC is seeking only permanent injunctions against Defendants and disgorgement of all proceeds gained or compensation received from the allegedly illegal conduct. The Court found that the only appropriate lesser sanction, aside from attorney's fees, would be preclusion of any evidence relating to the damages analysis. Such preclusion would effectively bar the SEC's claim for disgorgement and leave only the claim for injunctive relief. Because such injunctive relief would "bar defendants from pursuing their livelihood, based upon events that happened some seven years ago, for which defendants largely have been deprived of the ability to defend themselves properly," the Court found that no lesser sanctions were appropriate. (Id.)

### F. Pre-Filing Delays

The SEC argues that the Court placed too much emphasis on pre-filing delays both in evaluating the length of the delay and the degree of prejudice to Defendants. Courts in the Second Circuit have found, however, that consideration of pre-filing delays is not entirely improper. Indeed, in Handwerker v. AT&T Corp., 211 F.R.D. 203, 212-13 (S.D.N.Y. 2002), aff'd, 93 Fed. Appx. 328 (2d Cir. 2004), the Court dismissed the case for failure to prosecute, relying both on the plaintiff's failure to comply with multiple court orders as well as the plaintiff's fourteen-year delay in filing the action. With regard to the plaintiff's delay in filing

11

her complaint, the court found that "[s]uch a long passage of time inevitably impairs the completeness of a litigation record and the reliability of evidence," as "memories have faded, witnesses may have moved or passed away, and documents and other evidence may not be available in the most useful form." Id. at 212. The court also noted that "[s]uch exceptional [pre-filing] delay raises questions as to the degree to which it may be reasonably inferred that [the plaintiff's] earlier prosecution of her grievance may have been characterized by procrastination or lack of diligence and whether the prolongation of the litigation of this case may reflect a continuation of the same pattern." Id. at 213. Similarly, with regard to prejudice, the court found that "to the extent there may have been any unreasonable delay in [the plaintiff's] pursuit of this litigation predating its filing with the Court that may have been attributable to [the plaintiff's] tactical decisions, her continuation of the same dilatory course here would have a cumulative effect substantially prejudicial to [the defendant]." Id.

In Handwerker, however, there were also extensive, contumacious post-filing delays factoring in to the court's decision to dismiss the case. The court relied heavily on the fact that the plaintiff "declined to obey not one but as many as six separate Court Orders issued over a period of more than four months and directing the same performance," despite the fact that the court had granted the plaintiff "numerous extensions to accommodate her various requests and asserted special circumstances." Id. at 211. The court had given the plaintiff several "clear and unambiguous" warnings of the severe consequences of noncompliance, and noted that the plaintiff's noncompliance "relates not to an inconsequential issue or ancillary procedure, but to a critical phase of pretrial discovery proceedings that puts the proof of a dispute to the test." Id. at 212.

12

Other cases have also considered pre-filing delays in dismissing an action for lack of prosecution. In Windward Agency, Inc. v. Cologne Life Reinsurance Co., 353 F. Supp. 2d 538 (E.D. Pa. 2003), aff'd, 123 Fed. Appx. 481 (3d Cir. 2005), the court granted the defendant's Rule 41(b) motion to dismiss, considering the four years that elapsed from the time when the events underlying the suit took place until the time the complaint was filed as part of the "history of delay" in the case. Id. at 541. The court found that no lesser sanctions were appropriate, focusing on the "prejudice to defendant from the twelve years that have passed since the events in question took place." Id. Similarly, in Wenzoski v. Citicorp, 480 F. Supp. 1056 (N.D. Cal. 1979), the court considered the pre-filing delay, among other factors, in its decision to dismiss the case for failure to prosecute, reasoning that:

> Plaintiffs have **unreasonably delayed in the filing** and prosecution **of this action**, which has resulted in prejudice to all defendants. **The complaint was filed two and one-half years after the judgment** was rendered in Wenzoski v. Pollock, Case No. 62826, Superior Court of California, Marin County, **and six to eight years after the events upon which that judgment and this lawsuit are based**. Moreover, three years were allowed to elapse after filing suit before any service on any defendants was even attempted. . . . In fact, plaintiffs' failure to prosecute this action diligently has been carried over to proceedings before this court, where plaintiffs failed to file any papers on these motions until the very morning of the regularly scheduled hearing. Therefore, this action should be dismissed in its entirety and as to all defendants under Fed. R. Civ. P. 41(b).

Id. at 1061 (emphasis added).

Like Handwerker, however, both Windward Agency and Wenzoski involved significant post-filing delays that contributed to the courts' decisions to dismiss the cases. In Winward Agency, the case had been stayed more than six years pending arbitration. See 353 F. Supp. 2d at 541. Similarly, in Wenzoski, the plaintiffs waited three years after filing the suit before they even attempted to serve the defendants. See 480 F. Supp. at 1061. The post-filing delays in this

13

case are much less significant. Despite their numerous motions for extensions of time and sluggish pace in responding to Defendants' discovery requests, the SEC contends that they were on schedule to complete discovery within the March 31, 2007 cut-off date set by the court, only nine days after the Ruling dismissing the case was issued. The only significant post-filing incident was the SEC's failure to produce a disgorgement analysis as ordered by the Court.

On reconsideration, it appears that this Court placed more emphasis and relied more heavily on the pre-filing delays in this case than courts have done in other cases. While it is not clear that such reliance is entirely improper, the Court finds it appropriate to consider the case on the merits. It is expected, however, that the SEC will hasten its pace with regard to this litigation and will take care to adhere to the deadlines set forth in this ruling.

### G. Damages Analysis

As noted above, see supra note 3, the SEC attached to its Motion for Reconsideration a document purporting to be a disgorgement analysis. This document was not filed in accordance with this Court's order or any extension thereof. The Second Circuit has noted that "[b]ecause of the deterrence principle involved in dismissal for failure to prosecute, a 'plaintiff's hopelessly belated compliance should not be accorded great weight.'" Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982) (citation omitted). Defendants argue that the fact that the SEC was able to produce this document so quickly after the Court's dismissal order—but over seven months after it was due—"only highlights the intentional nature of its prior defiance and its utter contempt for the federal rules and this Court's Orders." (Defs. Durando & PacketPort, Inc.'s Mem. Opp. Mot. Recons. 6-7.) Defendants contend that they were prejudiced by the SEC's failure to produce a damages analysis because they did not have the benefit of the analysis when

they were deposing the SEC's expert witness or preparing their own expert reports. The Court finds that the prejudice sustained by the SEC's failure to provide a damages analysis, while not *de minimus*, does not warrant dismissal.

Defendants also attack the substance of the disgorgement analysis, arguing that the document is "woefully insufficient," and question why it was prepared and submitted by Moira T. Roberts, an attorney of record for the SEC in this action, rather than an accountant or other individual with expertise. Defendants' numerous challenges to the substance of the disgorgement analysis and hence to the SEC's proof in this action are better addressed on summary judgment, when these issues can be fully briefed and analyzed.

The required production of a "damages analysis," as contemplated by the Federal Rule of Civil Procedure, consists only of:

> a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(C). A review of the disgorgement analysis produced by the SEC indicates that they produced a computation of the amount of the disgorgement it was seeking and the evidentiary materials in support thereof. Nothing more is required. The analysis need not, as Defendants argue, explain why the specific defendants were targeted or prove why they are liable. The Court will limit the SEC in its proof at trial by the information and evidence set forth in the analysis, which, if deficient, will limit its ability to prove its case at that juncture.

## IV. CONCLUSION

For the foregoing reasons, the SEC's Motions for Reconsideration [Doc. Nos. 194, 196] are **granted**. This Court's March 21, 2007 Ruling dismissing this action against Defendants PacketPort.com, Inc., PacketPort, Inc., Ronald Durando, Microphase Corp., Gustave Dotoli and William Coons [Doc. No. 187] and April 4, 2007 Ruling dismissing this action against Defendant Robert H. Jaffe [Doc. No. 195] are **vacated**. On reconsideration, Defendants' Motions to Dismiss for Lack of Prosecution [Doc. Nos. 152, 154, 158, 159, 160, 189] are **denied**.

The parties shall inform this Court within five (5) business days from the date of this Order whether the discovery motions denied as moot on the basis of the dismissal need to be renewed. If Defendants' motions are found to have merit and/or the SEC's motion is found to be without merit, attorneys' fees shall be assessed.

It is further ordered that discovery shall be completed on or before June 8, 2007, and the parties shall file dispositive motions on or before July 6, 2007, at which point the case will be deemed ready for trial.

SO ORDERED.

Dated at New Haven, Connecticut, May  23 , 2007.

/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut